KATHRYN CARLIN v. CHARLES D. KENNEDY.[1]

January 19, 1906.

Nos. 14,506—(147).

**Personal Injury—Evidence.**

The evidence was sufficient to justify the jury in finding that the ironing mangle involved in this action was defective, in that it did not have a suitable guard over the rollers to protect employees while engaged in putting a covering upon the rollers, and that the employer was negligent in directing an inexperienced employee to assist in putting a covering on the rollers, without giving her suitable instructions and warning her as to the danger connected therewith.

**Assumption of Risk.**

The evidence was sufficient to justify the jury in finding that respondent did not assume the risks and was not guilty of contributory negligence in performing the work.

**Expert Testimony.**

Expert testimony was proper with reference to the proper and customary way of putting coverings upon such rollers, and as to whether such machines could reasonably be equipped with a proper guard to protect employees.

**Damages.**

Damages, as found by the jury, were not excessive.

Action in the district court for Ramsey county to recover $15,000 for personal injuries. The case was tried before Orr, J., and a jury, which rendered a verdict in favor of plaintiff for $7,500. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Robert E. Olds, Davis, Kellogg & Severance,* and *J. C. Mangan,* for appellant.

*Samuel A. Anderson,* for respondent.

LEWIS, J.

While working on an ironing mangle in appellant's laundry, respondent severely injured her hand, and having recovered a verdict

[1] Reported in 106 N. W. 340.

in the court below, the case is presented here by appellant upon the following propositions: (1) That as a matter of law appellant was not guilty of negligence either in the character of the machine furnished, or in failing to properly instruct respondent. (2) That it conclusively appears from the evidence that respondent assumed the risks incident to her work on the mangle. (3) That it conclusively appears from the evidence that she was guilty of contributory negligence. (4) That the court committed error in receiving the testimony of certain expert witnesses. (5) That the damages awarded were excessive.

This particular make of machine was not manufactured with any guard in front of the rollers on the delivery side, but had a guard in front of the rollers at the feeding side. The machine was of the usual pattern, consisting of the large heated steam roller, eighteen inches in diameter, against which rolled three smaller steel rollers, six inches in diameter, not heated, and located at stated intervals on the upper side of the large heated roller. The whole machine was operated by steam and was started and stopped by means of pedals located on the front and rear sides, near the floor, where the operator might readily reach the same while at work. The lowest of the small rollers on the delivery side, where the accident occurred, was three feet and six inches from the floor. Between this roller and the next small one above it, was a space of six and a half inches, where the large heated roller was exposed to view. Upon the same side was a folding board, thirty-two inches from the floor, nineteen and three quarters inches in width, and running the full length of the rollers, seventy-six inches.

Respondent was twenty-two years of age, and had never had any experience in a laundry, or with mangles, until she entered appellant's employ, seven days prior to the accident, having been theretofore employed at general housework. On the first day of her service with appellant, she was put to work on the feeding side of the machine, and for about an hour each day she folded clothes on the folding board at the delivery side. While at work at the feeding side she was engaged in feeding clothes into the machine by passing them under a brass rod, so located that her hands did not come near the rollers, although the direction which the clothes took and the purpose of the rollers and their method of coming in contact with the large heated roller, were ob-

vious upon the most casual observation. While at the rear of the machine respondent had nothing to do except to fold the clothes, but the fact that the small rollers were revolving against the heated roller was equally obvious. At the time of the accident, appellant directed respondent to assist another employee, Delia Lynch, in putting a fresh muslin covering on the lower roller on the delivery side. She was given no special instructions how to do the same, nor did she receive any warning of the danger attending such work. The felt covering on the roller was pulled up at the point where it met, and the edge of the sheet, or muslin covering, inserted, so that it would be caught when the roller turned. This was done by Delia Lynch, an experienced laundress, standing at the right end of the machine, while respondent took her position at the left end. When the muslin had been so inserted and stretched out between respondent and Delia, the machine was started by the latter placing her foot on the pedal, and the muslin was rapidly rolled around the roller, passing through the hands of the two girls who were attempting to stretch and hold it in such manner that it would wind evenly around the roller.

Respondent's account of the manner in which the accident happened, in answer to her counsel's questioning, is that neither appellant nor her fellow servant, Delia, gave her any directions as to the manner of doing this work, and that she attempted to hold the cloth as she saw Delia hold it; that she allowed the cloth to slip through her fingers with her left hand on the edge, at right angles with the machine, and her right hand toward the center of the cloth, at the side, so as to hold it straight and keep it from wrinkling; that Delia was pulling the cloth towards her end of the machine, and she did the same, and, as it went around and came close to the roller, she noticed Delia change the position of her hands, and when there was only about three or four inches of the cloth left Delia took her right hand from the end and brought it down to the side, at the rear, and she quickly did the same—the thumb of her hand underneath and her fingers on top—when suddenly the edge of the muslin curled around her little finger, and when she attempted to let go her hand was held by the cloth and was drawn over the small roller, between it and the large heated roller. The small roller revolved at the rate of fifteen revolutions a minute, and it only took two revolutions

to take up the cloth, consequently something less than eight seconds of time was required to wind the cloth around the roller from the time the machine was started.

1. There is no serious question as to the negligence of appellant, which consists of two elements: In furnishing a machine which could reasonably have been protected by proper guards, and in failing to properly instruct and warn the girl. According to the testimony of experts, it was perfectly feasible to place guards on the rear of the machine as well as on the front of it, and thus protect the hands of the operators from getting into the rollers when replacing the cloth covering. While the usual work done at that side of the machine was merely folding clothes on the folding board, yet the covering of the rollers had to be frequently renewed, and it was work attended with great danger to inexperienced persons. Owners and employers are not necessarily excused from supplying guards simply because the manufacturers did not make such machines with guards; nor are they necessarily justified in assuming such machines to be safe and suitable because factory inspectors made no objection to the character of the instrumentality. If by observation and experience an employer has reasonable ground to believe that such machines are dangerous in the hands of inexperienced workmen, green and ignorant girls, then he is called upon to use all reasonable means to protect them, if he continues to employ that class of labor. That duty requires him to be alert and to make his machine reasonably safe, and also to properly instruct the inexperienced in the use thereof, and to warn them of danger. Whether appellant did all that was required of him under the circumstances, was a question for the jury. Kaillen v. Northwestern Bedding Co., 46 Minn. 187, 48 N. W. 779.

2. In our judgment, the facts of this case do not show conclusively that respondent assumed the risks incident to her work while assisting in placing the covering on the roller. She knew, as any person of ordinary intelligence must have known, that if her hands came in close contact with the roller she would be injured. It does not follow, however, that she necessarily understood and appreciated the danger of having her hands drawn in between the rollers while assisting in the manner stated.

The case is distinguished from Blom v. Yellowstone Park Assn., 86 Minn. 237, 90 N. W. 397. In that case the person injured had worked five weeks on a similar mangle, and it was admitted that she knew all about the method of operating the machine, and of the danger connected therewith. Jensen v. Regan, 92 Minn. 323, 99 N. W. 1126, is not in point. There the injured person had more than a year's experience in laundry work and fully understood the operation of mangles, and she was clearly guilty of contributory negligence in attempting to remove a winding tablecloth without stopping the machine. In Berger v. St. Paul, M. & M. Ry. Co., 39 Minn. 78, 38 N. W. 814, the plaintiff had been operating the machine every day for a month, and there was nothing intricate or difficult about the feeding process. That case is similar to Blom v. Yellowstone Park Assn., supra, and it was evident that instructions could not have put the employee in possession of any knowledge which he did not already have by casual observation and by his experience. In Truntle v. North Star Woolen Mill Co., 57 Minn. 52, 58 N. W. 832, it was shown that the injured employee was fully advised of the dangers in connection with the work, and that he was guilty of contributory negligence in allowing the sleeve of his shirt to become unbuttoned and loose, and liable to be caught in the rollers.

But in the case before us respondent, although twenty-two years old, had not had any opportunity, either by observation or experience, to judge of the danger of having her hands caught or drawn in between the rollers, while stretching and holding a cloth, as required in this instance. Green hands should be put through a course of training, and, under direction and supervision, gradually accustomed to manipulate such machines, in order that they may have an opportunity to observe and judge of the danger attending the work, and, if for reasons of economy or lack of business system an operator does not see fit to take the necessary time to properly train ignorant girls, but subjects them to the hazards of learning through sad experience, he cannot divest himself of responsibility upon the plea that she ought to have known better. We do not hold, as a matter of law, under the evidence, that this girl did not assume the risks attending her work by remaining in the employment of appellant after she had been requested

to assist in putting the cloth on the roller, but we hold the evidence is insufficient to establish, as a matter of law, that she had such an understanding of the nature of the work and appreciation of its difficulties and consequent risks as to bring the case within the rule.

3. It cannot be said, as a matter of law, that respondent was guilty of contributory negligence because she permitted her hand to become entangled in the revolving cloth or to be caught in the rollers. She had never performed the service before, nor had she seen it done, and, according to her testimony, was doing the best she could by imitating the movements of her fellow servant. She had no other way of finding out, except to do as she saw Delia do, who was experienced. It was a question of fact to be determined in the usual way, whether she exercised that degree of care which would be exercised by an ordinarily prudent person under such circumstances.

4. Expert testimony was proper with reference to the character of the machine, and the feasibility of supplying it with guards, and as to what was the customary and proper way of putting a covering upon a roller of this kind. These subjects were not of such common knowledge that the jury were equally capable of judging. Anderson v. Fielding, 92 Minn. 42, 99 N. W. 357, 104 Am. St. Rep. 665, where authorities are collected. The qualification of the expert witnesses was largely in the discretion of the trial court, and there is nothing to indicate that such discretion was abused in this case.

5. The damages awarded were high, but not, in our opinion, excessive. Respondent's left hand was so badly crushed and deformed as to render it practically useless. Under such circumstances the verdict is not excessive, when compared with other cases of like character. Sobieski v. St. Paul & D. R. Co., 41 Minn. 169, 42 N. W. 863; Thompson v. Great Northern Ry. Co., 79 Minn. 291, 82 N. W. 637; Gray v. Commutator Co., 85 Minn. 463, 89 N. W. 322; Sloniker v. Great Northern Ry. Co., 76 Minn. 306, 79 N. W. 168.

Order affirmed.